Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:	(212) 292-5390
Facsimile:	(212) 292-5391
*Attorneys for Plaintiff*
*The Pinkfong Company, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE PINKFONG COMPANY, INC.,<br><br>*Plaintiff*<br><br>v.<br><br>AVENSY STORE, BEGIOL TTC, BOLMQHTS, CHENGMAICHAO, CHENYAOYU糖果 a/k/a CHENYAOYU CANDY, CTNUOBEE, DSFDSFHOO, FANGRUJIUHENWANGLUOKEJI, HAHPEE, HEFEI XUEDAO TRADING CO., LTD, HEZIWEI, HUIHONGQI, JICHANGZHOUXIANSUI, KUIJIDIANZISHANGWUSHOP, LIUZLIUZHIXIAOIXIAO, LUYUBEIMEIDIANPU, MEOW-MEOW-MEOW, PULI-US-US, RONGHANG US, SHARK US DZ-27, SHARKALAKA, SUMMER STORY, TANGCHUN, TENGYI DIRECT, XIAOSHUWEIXIAODIAN, YANGPENGFEI123, YUANHSAOMING, ZHANGBAODEBEIMEIDIANPU, ZHANGJINCHENGANQINGSHOUKONG, ZHENKA SHOP, ZHOUQIGONGSI, ZUZU BOOM and 盛煊木业有限公司 a/k/a SHENGXUAN WOOD INDUSTRY CO., LTD,<br><br>*Defendants* | 23-cv-9238 (JLR)<br><br>**PRELIMINARY INJUNCTION ORDER** |

iii

**GLOSSARY**

| Term | Definition |
|---|---|
| **Plaintiff or Pinkfong** | The Pinkfong Company, Inc. |
| **Defendants** | Avensy store, BeGiol TTC, BOLMQHTS, chengmaichao, chenyaoyu糖果 a/k/a chenyaoyu candy, CTNUOBEE, dsfdsfhOO, FangRuJiuHenWangLuoKeJi, hahpee, Hefei Xuedao Trading Co., Ltd, HEZIWEI, HuiHongQi, jichangzhouxiansui, kuijidianzishangwuSHOP, liuzliuzhixiaoixiao, luyubeimeidianpu, Meow-meow-meow, PULI-US-US, Ronghang US, SHARK US DZ-27, sharkalaka, summer story, TANGCHUN, TengYi Direct, XiaoShuWeiXiaoDian, YangPengFei123, yuanhsaoming, Zhangbaodebeimeidianpu, ZhangJinChengAnQingShouKong, Zhenka Shop, Zhouqigongsi, ZUZU BOOM and 盛煊木业有限公司 a/k/a Shengxuan Wood Industry Co., Ltd |
| **Amazon** | Amazon.com, a Seattle, Washington-based, online marketplace and e-commerce platform owned by Amazon.com, Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Yang Dec.** | Declaration of Su Jeong Yang in Support of Plaintiff's Application |

| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
|---|---|
| **Baby Shark Content** | One of Pinkfong's most successful creations, which is the Pinkfong "Baby Shark" song and viral music video with characters |
| **Baby Shark Applications** | U.S. Trademark Serial Application Nos.: 88/396,786 for registration of "PINKFONG BABY SHARK" for a variety of goods in Class 25; 88/529,984 for registration of "PINKFONG" for a variety of goods in Classes 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32 and 41; 88/530,086 for registration of "BABY SHARK" for a variety of goods in Classes 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29, 30, 32 and 41; 88/594,141 for "PINKFONG" for a variety of goods in Class 5; and 88/594,122 for "BABY SHARK" for a variety of goods in Class 5 |
| **Baby Shark Registrations** | U.S. Trademark Registration Nos.: 6,834,502 for "BABY SHARK" for a variety of goods in Classes 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 29 and 30; 5,803,108 for "BABY SHARK" for a variety of goods in Class 28; 6,488,471 for "BABY SHARK" for a variety of goods in Classes 9, 16, 25 and 41; 4,515,238 for "BABY SHARK U.S.A" for a variety of goods in Class 28; 5,483,744 for "PINKFONG" for a variety of goods in Classes 3 and 21; 5,327,527 for "PINKFONG" for a variety of goods in Classes 9, 16 and 28; 4,993,122 for "PINKFONG" for a variety of goods in Classes 9 and 25; 6,487,494 for "PINKFONG" for a variety of goods in Classes 2, 3, 9, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28, 30 and 41; 6,138,374 for _pinkfong_ for a variety of goods in Class 41; 6,337,210 for "PINKFONG BABY SHARK" for a variety of goods in Class 21; 6,343,519 for "PINKFONG BABY SHARK" for a variety of goods in Class 25; 6,503,438 for "PINKFONG" for a variety of goods in Class 5; and 6,495,600 for [musical notation image] for a variety of goods in Classes 9 and 41 |
| **Baby Shark Marks** | The marks covered by the Baby Shark Registrations and Baby Shark Applications |
| **Baby Shark Works** | U.S. Copyright Registration Nos.: VA 2-130- |

| | |
|---|---|
| | 856, covering Baby Shark; VA 2-130-847, covering Daddy Shark; VA 2-130-854, covering Mommy Shark; VA 2-131-983, covering Pink Fong Mascot |
| **Baby Shark Products** | A wide variety of consumer products created via an extensive worldwide licensing program such as toys, sound books, t-shirts, associated with and/or related to the Baby Shark Content |
| **Counterfeit Products** | Products bearing or used in connection with the Baby Shark Marks and/or Baby Shark Works, and/or products in packaging and/or containing labels and/or hang tags bearing the Baby Shark Marks and/or Baby Shark Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Baby Shark Marks and/or Baby Shark Works and/or products that are identical or confusingly or substantially similar to the Baby Shark Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Amazon, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) |

vi

|  | (whether said account is located in the U.S. or abroad) |
|---|---|
| **Financial Institutions** | Amazon.com, Inc., Amazon Payments, Inc. ("Amazon Pay"), PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer") and PingPong Global Solutions, Inc. ("PingPong") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly, by Amazon, such as Amazon.com, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

WHERAS, Plaintiff having moved *ex parte* on October 20, 2023 against Defendants for the following: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts and Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery;

WHEREAS, the Court entered an Order granting Plaintiff's Application on November 8, 2023 ("TRO") which ordered Defendants to appear on November 21, 2023 at 10:00 a.m. to show cause why a preliminary injunction should not issue ("Show Cause Hearing");

WHEREAS, on November 13, 2023, Plaintiff filed a letter requesting to modify and extend the TRO, including the date of the Show Cause Hearing;

WHEREAS, on the same day, November 13, 2023, the Court granted Plaintiff's request, adjourning the Show Cause Hearing to November 30, 2023 at 10:00 a.m. ("November 13, 2023 Order") and entered an amended TRO reflecting the same ("Amended TRO");

WHEREAS, on November 21, 2023 pursuant to the alternative methods of service authorized by the TRO, Plaintiff served the Summons, Complaint, TRO, all papers filed in support of the Application, the November 13, 2023 Order and the Amended TRO on the following Defendants: chengmaichao, chenyaoyu糖果 a/k/a chenyaoyu candy, dsfdsfhOO, FangRuJiuHenWangLuoKeJi, Hefei Xuedao Trading Co., Ltd, jichangzhouxiansui, kuijidianzishangwuSHOP, luyubeimeidianpu, Meow-meow-meow, PULI-US-US, Ronghang US, summer story, TANGCHUN, XiaoShuWeiXiaoDian, YangPengFei123, Zhangbaodebeimeidianpu and ZUZU BOOM (collectively, the "Served Defendants");[1]

---

[1] As directed by the Court in the TRO, Plaintiff is in the process of serving the following sixteen (16) Defendants via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters: Avensy store, BeGiol TTC, BOLMQHTS,

1

WHEREAS, on November 30, 2023 at 10:00 a.m., Plaintiff appeared at the Show Cause Hearing, however, none of the Defendants appeared.

WHEREAS, the Court has personal jurisdiction because the Served Defendants are subject to personal jurisdiction under CPLR § 302(a)(1), and exercising personal jurisdiction over the Served Defendants comports with the Due Process Clause of the U.S. Constitution. *See Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 73 (2d Cir. 2023) ("To determine whether jurisdiction exists over a non-domiciliary, we first consider whether the state's long-arm statute provides a statutory basis for jurisdiction and, if so, whether exercising personal jurisdiction would comport with due process.")

WHEREAS, the Served Defendants are subject to personal jurisdiction, as the New York long-arm statute provides a statutory basis for jurisdiction through its "transacting business" provision. *See* CPLR § 302(a)(1). "The CPLR 302(a)(1) jurisdictional inquiry is twofold: under the first prong the defendant must have conducted sufficient activities to have transacted business in the state, and under the second prong, the claims must arise from the transactions." *Al Rushaid v. Pictet & Cie*, 68 N.E.3d 1, 7 (N.Y. 2016). Under the first prong, "[e]xamination of a defendant's actions in New York is primarily a fact-based inquiry that requires an assessment of whether the non-domiciliary's activities in the state were purposeful." *State v. Vayu, Inc.*, 206 N.E.3d 1236, 1238 (N.Y. 2023)[2]. "Purposeful activities, this Court has explained, are volitional acts by which the non-domiciliary avails itself of the privilege of conducting activities within the forum State,

---

CTNUOBEE, hahpee, HEZIWEI, HuiHongQi, liuzliuzhixiaoixiao, SHARK US DZ-27, sharkalaka, TengYi Direct, yuanhsaoming, ZhangJinChengAnQingShouKong, Zhenka Shop, 盛煊木业有限公司 a/k/a Shengxuan Wood Industry Co., Ltd. and Zhouqigongsi.

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes and citations are omitted.

thus invoking the benefits and protections of its laws." *Id.* To satisfy the second prong, "the plaintiff's cause of action must have an articulable nexus or substantial relationship with the defendant's transaction of business here." *D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 78 N.E.3d 1172, 1176 (N.Y. 2017). Here, the Served Defendants operate interactive merchant storefronts on Amazon.com, allowing New York consumers to inquire and communicate with the Served Defendants and purchase goods, including counterfeit versions of Plaintiff's Baby Shark products ("Counterfeit Products"), by and through the Served Defendants' listings, and upon completion of a sale, likely ship goods to New York. Plaintiff's causes of action alleging trademark counterfeiting, infringement of registered trademarks, infringement of unregistered trademarks, false designation of origin, copyright infringement and unfair competition have an "articulable nexus" with the Served Defendants' transaction of business in New York, as Plaintiff alleges the Counterfeit Products infringe on its trademarks and copyrights. *See id.*

WHEREAS, exercising personal jurisdiction over the Served Defendants comports with the Due Process Clause of the U.S. Constitution. "In the context of personal jurisdiction, due process demands that each defendant over whom a court exercises jurisdiction have some minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 269 (2d Cir. 2023). "This inquiry usually proceeds in two steps -- an analysis of whether each defendant has minimum contacts with the forum state, and an analysis of whether exercising jurisdiction would comport with fair play and substantial justice." *Id.* Plaintiff has shown "minimum contacts" because the Served Defendants "deliberately chose" to sell its products in New York and thereby benefit from profits earned through New York customers. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171 (2d Cir. 2013) (finding minimum

contacts where defendant "deliberately chose" to process wire transfers using New York's banking system, the "instrument for accomplishing the alleged wrongs for which the plaintiffs seek redress"). Exercising jurisdiction here would also "comport with fair play and substantial justice." *See In re Platinum & Palladium Antitrust Litig.*, 61 F.4th at 269. Because the Served Defendants' products are available to be sold, and are likely sold in New York, the forum has an interest in the resolution of the dispute. *See id.* at 273-74 (finding district court's assertion of personal jurisdiction over two international companies reasonable under the second step of the due process inquiry).

WHEREAS, "[t]o obtain a preliminary injunction, [a plaintiff] must show (1) a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor, (2) that they are likely to suffer irreparable injury in the absence of an injunction, (3) that the balance of hardships tips in [its] favor, and (4) that the public interest would not be disserved by the issuance of a preliminary injunction." *Mendez v. Banks*, 65 F.4th 56, 63-64 (2d Cir. 2023).

WHEREAS, Plaintiff has established a likelihood of success on the merits. "To establish a claim of copyright infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. To satisfy the second element, a plaintiff must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's work." *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020). Plaintiff offers evidence it owns valid copyright registrations. Plaintiff also offers evidence of the Served Defendants' allegedly infringing products, which look substantially similar to Plaintiff's products and are sold without Plaintiff's consent.

WHEREAS, Plaintiff has sufficiently shown it is likely to suffer irreparable harm because there is a similarity between the products, and there is injury to Plaintiff's business, value, goodwill and reputation, if the offending products continue to be sold.  Plaintiff has also shown the balance of hardships favors it, due to the hardship caused by the Served Defendants' infringement and the lack of any hardship to the Served Defendants in having to comply with copyright law.  Finally, issuance of the injunction would serve the public interest, because it would dispel public confusion and because respect for intellectual property rights is in the public interest.

## ORDER

1. The injunctive relief previously granted in the TRO shall remain in place through the pendency of this action, and issuing this Order is warranted under Federal Rule of Civil Procedure 65 and Section 34 of the Lanham Act.

   a) Accordingly, the Served Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

      i. manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products or any other products bearing the Baby Shark Marks and/or Baby Shark Works and/or marks and/or artwork that are confusingly and/or substantially similar to, identical to and constitute a counterfeiting or infringement of the Baby Shark Marks and/or Baby Shark Works;

      ii. operation of the Served Defendants' User Accounts and the Served Defendants' Merchant Storefronts, including, without limitation, continued operation of the Served Defendants' User Accounts and Merchant Storefronts in violation of

      this Order;

iii. directly or indirectly infringing in any manner Plaintiff's Baby Shark Marks and Baby Shark Works;

iv. using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's Baby Shark Marks and Baby Shark Works, to identify any goods or services not authorized by Plaintiff;

v. using Plaintiff's Baby Shark Marks and/or Baby Shark Works and/or any other marks that are confusingly similar to the Baby Shark Marks and/or any other artwork that is substantially similar to the Baby Shark Works, on or in connection with the Served Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products;

vi. using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by the Served Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by the Served Defendants and the Served Defendants' commercial activities and Plaintiff;

vii. secreting, concealing, destroying, altering, selling off, transferring or otherwise

      disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating to their User Accounts, Merchant Storefronts or the Served Defendants' Assets and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

  viii.  effecting assignments or transfers, forming new entities or associations, or creating and/or utilizing any other platform, User Account, Merchant Storefront or any other means of importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products for the purposes of circumventing or otherwise avoiding the prohibitions set forth in this Order; and

  ix.  knowingly instructing any other person or business entity in engaging in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(viii) above, 1(b)(i) through 1(c)(i) below.

b) Accordingly, the Served Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers and Financial Institutions who satisfy those requirements, are hereby restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

  i.  secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying the Served Defendants' Assets from or to the Served Defendants'

       Financial Accounts until further ordered by this Court.

  c) Accordingly, the Served Defendants and all persons in active concert and participation with them who receive actual notice of this Order, including the Third Party Service Providers who satisfy those requirements, are restrained and enjoined from engaging in any of the following acts or omissions pending the final hearing and determination of this action or until further order of the Court:

      i. operation of the Served Defendants' User Accounts and the Served Defendants' Merchant Storefronts, including, without limitation, continued operation of the Served Defendants' User Accounts and Merchant Storefronts in violation of this Order;

      ii. instructing, aiding or abetting the Served Defendants and/or any person or business entity to engage in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(viii), 1(b)(i) through 1(c)(i) above, including, without limitation, by providing services necessary for the Served Defendants to continue operating the Served Defendants' User Accounts and Merchant Storefronts in violation of this Order.

2. As sufficient cause has been shown, the asset restraint granted in the TRO shall remain in place through the pendency of this litigation, including that:

  a) within five (5) days of receipt of notice of this Order, any newly discovered Financial Institutions who are served with this Order shall locate and attach the Served Defendants' Financial Accounts, shall provide written confirmation of such attachment to Plaintiff's counsel and provide Plaintiff's counsel with a summary report containing account details for any and all such accounts, which shall include,

at a minimum, identifying information for the Served Defendants and the Served Defendants' User Accounts, contact information for the Served Defendants (including mailing addresses and e-mail addresses), account numbers and account balances for any and all of the Served Defendants' Financial Accounts.

3. As sufficient cause has been shown, the expedited discovery previously granted in the TRO shall remain in place through the pendency of this litigation, including that:

   a) Plaintiff may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure as well as Local Civil Rule 33.3 of the Local Rules for the Southern and Eastern Districts of New York and the Served Defendants who are served with this Order shall provide written responses under oath to such interrogatories within fourteen (14) days of service to Plaintiff's counsel.

   b) Plaintiff may serve requests for the production of documents pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Served Defendants who are served with this Order and the requests for the production of documents shall produce all documents responsive to such requests within fourteen (14) days of service to Plaintiff's counsel.

   c) Within fourteen (14) days after receiving notice of this Order, all Financial Institutions who receive service of this Order shall provide Plaintiff's counsel with all documents and records in their possession, custody or control, relating to any and all of the Served Defendants' Financial Accounts, User Accounts and Merchant Storefronts, including, but not limited to, documents and records relating to:

      i. account numbers;
      ii. current account balances;

    iii. any and all identifying information for the Served Defendants, the Served Defendants' User Accounts and the Served Defendants' Merchant Storefronts, including, but not limited to, names, addresses and contact information;

    iv. any and all account opening documents and records, including, but not limited to, account applications, signature cards, identification documents, and if a business entity, any and all business documents provided for the opening of each and every of the Served Defendants' Financial Accounts;

    v. any and all deposits and withdrawal during the previous year from each and every one of the Served Defendants' Financial Accounts and any and all supporting documentation, including, but not limited to, deposit slips, withdrawal slips, cancelled checks and account statements; and

    vi. any and all wire transfers into each and every of the Served Defendants' Financial Accounts during the previous year, including, but not limited to, documents sufficient to show the identity of the destination of the transferred funds, the identity of the beneficiary's bank and the beneficiary's account number;

d) Within fourteen (14) days of receipt of service of this Order, the Third Party Service Providers shall provide to Plaintiff's counsel all documents and records in its possession, custody or control relating to the Served Defendants' User Accounts and the Served Defendants' Merchant Storefronts, including, but not limited to, documents and records relating to:

    i. any and all User Accounts and the Served Defendants' Merchant Storefronts and account details, including, without limitation, identifying information and

      account numbers for any and all User Accounts and the Served Defendants' Merchant Storefronts that the Served Defendants have ever had and/or currently maintain with the Third Party Service Providers that were not previously provided pursuant to Paragraph V(C) of the TRO;

  ii. the identities, location and contact information, including any and all e-mail addresses of the Served Defendants that were not previously provided pursuant to Paragraph V(C) of the TRO;

  iii. the nature of the Served Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with the Served Defendants' User Accounts and the Served Defendants' Merchant Storefronts, a full accounting of the Served Defendants' sales history and listing history under such accounts and the Served Defendants' Financial Accounts with any and all Financial Institutions associated with the Served Defendants' User Accounts and the Served Defendants' Merchant Storefronts; and

  iv. The Served Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of counterfeit Products, or any other products bearing the Baby Shark Marks and/or Baby Shark Works and/or artwork that are confusingly and/or substantially similar to, identical to and constitute an infringement of the Baby Shark Marks and/or Baby Shark Works.

4. As sufficient cause has been shown, and pursuant to FRCP 4(f)(3), service may be made on, and shall be deemed effective as to the following Defendants chengmaichao,

chenyaoyu糖果 a/k/a chenyaoyu candy, dsfdsfhOO, FangRuJiuHenWangLuoKeJi, Hefei Xuedao Trading Co., Ltd, jichangzhouxiansui, kuijidianzishangwuSHOP, luyubeimeidianpu, Meow-meow-meow, PULI-US-US, Ronghang US, summer story, TANGCHUN, XiaoShuWeiXiaoDian, YangPengFei123, Zhangbaodebeimeidianpu and ZUZU BOOM ("Served Defendants") if it is completed by one of the following means:

   a) delivery of: (i) a PDF copy of this Order, and (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com or via website publication through a specific page dedicated to this Lawsuit accessible through ipcounselorslawsuit.com) where each Defendant will be able to download a PDF copy of this Order, to the Served Defendants' e-mail addresses as identified by Amazon pursuant to Paragraph V(C) of the TRO or may otherwise be determined.

5. All other Defendants must be served in accordance with the Hague Convention.

6. As sufficient cause has been shown, such alternative service by electronic means ordered in the TRO and herein shall be deemed effective as to the Served Defendants, Third Party Service Providers and Financial Institutions through the pendency of this action.

7. As sufficient cause has been shown, service of this Order shall be made on and deemed effective as to the Third Party Service Providers and Financial Institutions if it is completed by the following means:

   a) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

   b) delivery of: (i) a true and correct copy of this Order via Federal Express to Amazon.com, Inc. at Corporation Service Company 300 Deschutes Way SW, Suite

304, Turnwater, WA 98501, (ii) a PDF Copy of this Order and (iii) a link to a secure website where Amazon.com, Inc. and Amazon Pay will be able to download a PDF copy of this Order via electronic mail to tro-notices@amazon.com;

c) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to thirdpartyrequests@payoneer.com and Holly Clancy and Melissa Godwin, counsel for Payoneer Inc., at Holly.Clancy@us.dlapiper.com and Melissa.Godwin@us.dlapiper.com, respectively; and

d) delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to legal-int@pingpongx.com.

8. The Served Defendants are hereby given notice that they may be deemed to have actual notice of the terms of this Order.  Any act in violation of this Order by the Served Defendants or any one of them, or by any persons in active concert or participation with the Served Defendants who have actual notice of this Order, may be considered and prosecuted as in contempt of this Court.

9. The $20,000.00 bond posted by Plaintiff shall remain with the Court until a final disposition of this case or until this Order is terminated.

10. This Order shall remain in effect during the pendency of this action, or until further order of the Court.

11. Any the Served Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two (2) days' notice to Plaintiff or on shorter notice as set by the Court.

**SO ORDERED.**

SIGNED this 30th day of November, 2023, at 10:30 a.m.
New York, New York

_____
HON. JENNIFER L. ROCHON
UNITED STATES DISTRICT JUDGE